## WILLIAM A. HALL *v.* C. WINAM.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JUNE 13, 1902.          DECIDED JULY 1, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Where two persons stand in such a relation that confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantageous agreement at the expense of the confiding party, the one so misusing his position will not be permitted to retain the benefit, although the agreement or contract could not have been impeached if no such confidential relation had existed.

A contract entered into between an inexperienced young man, with little business ability and meager knowledge of the value of money or property and an experienced and capable business man, without independent advice and for an inadequate consideration, the weaker confiding in and trusting the stronger to protect his interest, will be annulled and cancelled by a court of equity at the suit of the dependent party.

OPINION OF THE COURT BY GALBRAITH, J.

This is an appeal from the decree of a Circuit Judge of the First Circuit annulling and cancelling a lease, executed between the plaintiff and the defendant, on the grounds of undue influence and inadequacy of consideration.

It appears from the evidence that the plaintiff's father, Edwin J. Hall, owned 6.794 acres of land located within the business section of Honolulu and that he leased all of this property for a term of 15 years ending in July, 1906, for a yearly rental of $1,000.00, the lessee paying all taxes, water rates and assessments that might be laid against the premises during the term; that the defendant acquired this lease by assignment in the year 1897 and entered into possession; that prior to his death and after the execution of this lease Edwin J. Hall deeded this property to his two minor children, the plaintiff and his sister, an undivided one-half interest to each; that for more than four years prior to his coming of age the plaintiff's person and property were in the care of a guardian; that he lived with a relative and was allowed $12.50 per month for school and clothes; that he was married at 17 and after his marriage the allowance was increased to $25.00 per month; that for several years thereafter this amount seemed to be ample to supply the wants of the plaintiff and his family; that about 1897 the plaintiff became acquainted with the defendant as his tenant; that this acquaintance was carefully cultivated by the defendant, he paid social visits to his home and extended little courtesies until the plaintiff came to look upon the defendant as his best friend and adviser; that after this acquaintanceship had ripened into a warm friendship and about one year before plaintiff came of age the defendant secured from him a lease for his one half of the premises, the term commencing at the expiration of the lease made by Hall, Sr., in 1906, for a rental of $750.00 per annum; that it was agreed between the parties that the lease should be kept secret; that plaintiff's wife finally discovered it and carried it to his guardian who summoned the parties before him and after scold-

ing the plaintiff for his folly in making the lease and warning the defendant that he had no right to make a lease with a minor, destroyed the same in the presence of the parties; that a short time prior to the execution of this cancelled lease the plaintiff commenced to borrow money of the defendant; that the defendant advanced money to the plaintiff from this time until after the execution of the lease in question, February 24, 1901, on his unsecured note, whenever requested to do so, in amounts ranging from $5.00 to $150.00 dollars; that after plaintiff discovered that he could obtain money so easily he entered upon a career of the "fast young man" and spent money recklessly and foolishly; that plaintiff's wife begged the defendant not to let the plaintiff have any more money and he promised that he would not; that with full knowledge of the purposes for which the money was used the defendant continued to advance the plaintiff money whenever asked with the evident purpose and design of retaining his friendship until he came of age and qualified to make a contract for an extension of the lease so much desired; that about ten days before his twenty-first birthday the plaintiff left his home and commenced a protracted spree on money furnished by the defendant and advanced by him during the continuance of this debauch, returning to his home on the day following his 21st birthday; that the defendant called on him that day (Saturday) and asked for the lease and it was agreed that he would call at the office of lawyers suggested by the defendant on the following Monday and execute it, which was done; that the lease was for the plaintiff's undivided one-half of the premises for a term of 25 years, commencing at the expiration of the present lease in 1906, for a rental of $1,200.00 per annum, the defendant paying taxes on the improvements only; that the plaintiff did not take independent advice with the guardian or any other disinterested person nor did the defendant ask him to do so; that the plaintiff at the time the lease was executed did not know the value of the property and seemed to rely wholly upon the defendant and believed that he would do the right thing by him; that the property (the whole land) is assessed for taxes

at $50,000.00 and the annual tax thereon is $500.00 and that the reasonable net rental value of the land is $3,000.00; that the plaintiff is an Hawaiian *21 years old* with fair education and slight business training, obtained in nine or ten months clerkship in a store, and with meager knowledge of the value of property or money; that the defendant is a Chinaman, 42 years old and a capable business man, having had fifteen years' business experience at Honolulu.

It is contended on behalf of the defendant that a part of the land was low and marshy and had been condemned as insanitary and ordered to be filled in by the Board of Health; that in order to comply with the order of the health authorities and make all of the property inhabitable it was necessary to expend large sums of money in filing in and raising the grade of the premises; that for the brief unexpired term of the lease held by the defendant he could not afford to make this great outlay; that he was compelled to either surrender the lease for the remainder of the term or secure an extension for an additional term; that this motive prompted him to secure an extension of the term at the earliest possible time it was possible for him to do so.

These considerations offer a plausible and reasonably justifiable motive for wishing and securing an extension of the lease at the time, but would not warrant the defendant in taking an unfair advantage of the plaintiff or in driving an unconscionable bargain with him.

It is clear from the evidence that the rent reserved is not a fair rental value of the present estimated value of the plaintiff's interest therein. It is less than 4% net of the valuation placed thereon for taxes. What the value of the land will be at the commencement of the term, 1906, is somewhat uncertain, but all of the witnesses who testified agree that it would then be greater than it is at present. It has been urged and it seems possible that the taxes on the land which the plaintiff is required to pay will before the expiration of the term of 25 years be greater than the rent reserved. Inadequacy of consideration alone will

not authorize a court of equity to interfere with the agreement of the parties, but taken with other circumstances it is a potent factor. The relation existing between the parties and the trust and confidence reposed in the defendant by the plaintiff seem to bring this case within the well established jurisdiction of a Court of Equity.

The rule is well stated in the case of *Tate v. Williamson*, at pages 60 and 61, 11 L. R. Ch. Appeal Cases, as follows:

"The jurisdiction exercised by Courts of Equity over the dealings of persons standing in certain fiduciary relations has always been regarded as one of a most salutary description. The principles applicable to the more familiar relations of this character have been long settled by well-known decisions, but the courts have always been careful not to fetter this useful jurisdiction by defining the exact limit of its exercise. Wherever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed."

The same principle is announced by the Supreme Court of the United States: "When a person, from infirmity and mental weakness, is likely to be easily influenced by others, transactions entered into by such persons without independent advice will be set aside, if there is any unfairness in them." *Allore v. Jewell*, 94 U. S. 506.

The conclusion is inevitable that the defendant did abuse the confidence placed in him by the plaintiff and took advantage of the influence he exerted over the plaintiff to obtain a bargain greatly to his interest and much against the interest of the plaintiff and that this contract so obtained ought in equity and good conscience to be cancelled and annulled.

The decree appealed from is affirmed.

*Kinney, Ballou & McClanahan*, for the plaintiff.

*A. S. Hartwell* and *Atkinson & Judd* for the defendant.