AMANDA MEHEULA *v.* HENRY T. HAUSTEN AND EMMA A. HAUSTEN.

No. 1626.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

SUBMITTED MAY 25, 1926.                    DECIDED JULY 7, 1926.

PERRY, C. J., LINDSAY, J., AND CIRCUIT JUDGE MASSEE
IN PLACE OF BANKS, J., DISQUALIFIED.

EQUITY—*deeds—reformation.*

Where an elderly and ignorant Hawaiian woman, reposing implicit trust and confidence in a husband and wife who were her intimate friends and neighbors, agreed to convey to them a specific portion of her house and lot and was induced through the fraud of such friends to convey to them the whole of her house and lot, equity will order reformation of the deed to conform to the agreement of the parties.

TRUSTS—*fiduciary or confidential relations.*

A fiduciary relation exists between parties where there is a relation of trust and confidence between them,—that is, where confidence is reposed by one party and the trust accepted by another. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. Such relation need not be legal. It may be moral, social, domestic or merely personal.

SAME—*insurance—proceeds of.*

If a fire insurance policy is issued upon a whole house to a person who owns one-half thereof and the whole amount of the insurance is recovered by him, he becomes trustee for the owner of the other half of the property for half of the sum received.

OPINION OF THE COURT BY LINDSAY, J.

This is an appeal from a decree of a circuit judge, at chambers, in equity, ordering the reformation of a deed executed by complainant conveying to the respondents a certain piece of land at Kaimuki, in the City of Honolulu.

But two questions are presented by the appeal, first, whether under the evidence the circuit judge properly decreed that the deed in question should be reformed; and, second, whether the complainant is entitled to any of the proceeds of a fire insurance policy taken out by the respondents on a house on the premises which was destroyed by fire.

The evidence is set forth in two large volumes of the transcript. We will not attempt to discuss all of the evidence in detail but will only state the gist thereof.

The deed that is sought to be reformed is dated April 20, 1923. Prior to that date complainant was the owner of a tract of land situate at Kaimuki, having a frontage on one street of 225 feet and a depth of 200 feet. There was a wooden frame building on the premises which was occupied by complainant. This building was subsequently insured for $3000 by the respondent Hausten who, when the building was later destroyed by fire, collected the insurance. There was considerable conflict as to the value of the property, Hausten admitting that it was worth $7000. The circuit judge found that it was worth about $9000, and there was evidence in support of that valuation. One Lee Len held a mortgage on the property to secure a loan of $2000. Complainant is an elderly Hawaiian woman, with a rather limited knowledge of the English language and little experience in business affairs. Complainant and respondents were close neighbors and were on terms of intimate friendship, the respondent Emma Hausten being also a Hawaiian or part Hawaiian who speaks English fluently, and is engaged as a teacher in the public schools of the city. The respondent Hausten appears to be an intelligent man with considerable experience in the real estate business. Complainant is a widow, her husband having died shortly before the time in question.

The mortgage was past due and the mortgagee was demanding payment and, complainant, being without means to discharge the mortgage, sought assistance from respondents. She first saw Mrs. Hausten on the matter and proposed that, if the latter would pay off the mortgage, complainant would convey to her a portion of the land with a frontage of 75 feet and a depth of 200 feet. Mrs. Hausten conferred with her husband who thereafter, according to complainant, accepted this offer. Hausten's version of this matter is that he thought the area offered was not sufficient and suggested that the portion to be conveyed should have a frontage of 100 feet and a depth of 200 feet. Complainant testified that the suggestion that the portion to be conveyed should be 100 feet frontage by 200 feet depth was not made at that time but was made by Hausten on a later occasion after his return from the Island of Hawaii where he had gone to secure certain outstanding interests in the property. According to complainant, the reason given by Hausten why he should be given a larger area than that first mentioned was that he had been at some expense in making the trip and had been required to make certain payments for the outstanding interests. Be this as it may, it is admitted by all the parties that the agreement finally reached was that, in consideration of the respondents' paying off the mortgage, complainant would convey to them a portion of her land with a frontage of 100 feet and a depth of 200 feet. Hausten testified that when this understanding was reached, in the presence of complainant, he measured off the proposed frontage and it was found that 100 feet frontage would take in a part of the house of complainant. This fact did not seem, however, to be considered of much importance nor occasion much, if any, comment by the parties. At the beginning of these negotiations it was assumed by all the

parties that complainant owned all of the land in question. Later the parties repaired to the office of Judge Robinson, the attorney of Hausten, who had represented him in other matters. Judge Robinson, on investigating the title, discovered that complainant and her deceased husband had held title as tenants in common, and the husband having died intestate leaving three brothers and one sister, these relatives were entitled to undivided interests in the land. Up to this point in the negotiations, although the parties differed in unimportant details, there seems to be no real dispute. It is from here on that the parties take diametrically opposite positions. In the office of Judge Robinson the complainant signed a document purporting to give to Hausten a ninety-day option to purchase an undivided one-half interest in the entire property. Respondents testified that the option was translated and read to complainant by Mrs. Hausten and that she thoroughly understood the purport thereof. There is some evidence tending to show that when the outstanding interests of the brothers and sister of the deceased husband were discussed, Judge Robinson suggested that complainant should convey an undivided one-half of the property to respondents. On the other hand complainant testified that no such suggestion was ever made to her and that all that she understood she was doing in signing the option was binding herself not to sell the property to anyone else for ninety days. According to complainant the understanding all along was that she was to convey 100 feet frontage by 200 feet depth and it never was suggested to her that this agreement should be changed into an agreement on her part to convey a larger area than this. The conflict in the evidence on this point was such as to justify the finding of the circuit judge that complainant's version was more worthy of credence than that of the respondents.

Shortly after the signing of the option Hausten went to the Island of Hawaii and procured from the three brothers of complainant's deceased husband conveyances of their respective and undivided interests in the property to complainant. A sister of complainant's husband residing in Kaimuki also conveyed her interest to complainant. After these interests had been acquired by complainant, on April 20, 1923, complainant signed and acknowledged the deed that has given rise to this controversy. By this deed, for an express consideration of $4000, complainant conveyed to respondents the whole of her property containing a frontage of 225 feet and a depth of 200 feet. According to complainant the agreement that she had entered into was that she should convey to respondents only a specific portion of her property, namely, 100 by 200 feet thereof, and that at no time was the suggestion made to her that she should, nor did she ever agree that she would, convey the whole of her property, and that, when she signed the deed, it was under the impression that she was but fulfilling her agreement to convey to respondents a portion of her land. According to the respondent Hausten, upon his return from Hawaii, it was complainant herself who suggested that he should purchase the entire property and he accepted the offer. Hausten's testimony regarding this whole transaction was, to say the least, most unsatisfactory. In answer to a question put to him by the circuit judge, Hausten testified that complainant offered him the entire piece of land for $4000 and that, as a pure gratuity, he offered to build for her on a portion of the land a small cottage which complainant might occupy free of rent during her life. Later Hausten testified that his agreement with complainant was that she should convey to respondents the entire tract, in consideration for which Hausten would pay her $4000, such payment to be made by Hausten's

paying off the mortgage to Lee Len, principal and interest amounting to a little over $2000, and the remainder of the purchase price to be paid to complainant in monthly installments of $30. As a further part of the consideration Hausten was also to build the small cottage alluded to and, according to Mrs. Hausten, in addition to the foregoing, it was understood that after the $30 monthly installment had exhausted the balance of the expressed money part of the consideration, Hausten was to support complainant for the rest of her life. According to Hausten the original plan whereby complainant should convey only a portion of her property to respondents was abandoned and that fact was discussed by complainant and Hausten in the presence of Hausten's attorney Robinson. Notwithstanding the fact that Robinson had acted as attorney for Hausten all through these negotiations, the deed was not drafted by Robinson but by one Makinney, a notary, and the only reason given for Robinson's not drafting the deed was that he was too busy. According to Makinney's testimony, his instructions as to what the deed should contain were given him by Hausten, and the deed conveying all of complainant's property to respondents for $4000 was made by Makinney in pursuance of these instructions. In answer to a question by the circuit judge, Hausten testified that he told Makinney that the consideration to be paid for the land was the assumption of the outstanding mortgage, the payment of $30 per month installments and the undertaking on Hausten's part to build a cottage which complainant should have the right to occupy for life. Makinney denied this and none of these things appear in the deed as part of the consideration. As to what actually occurred at the time complainant signed the deed there is again considerable conflict in the evidence. Mrs. Hausten, between whom and the complainant the negotiations concerning this

land originated, testified as to her great solicitude for the welfare of complainant and her wish that complainant should be thoroughly advised of all that she did in this matter, nevertheless, according to her own testimony, after the option, heretofore spoken of, had been signed, she (Mrs. Hausten) lost all interest in the matter and claimed to know nothing whatever about the later developments and the alleged proposal that all of the land should be conveyed, neither did she go with complainant to Makinney's office when the deed was executed. Complainant testified that she did not read the deed, and from her limited knowledge of English it is doubtful if she would have understood its contents had she tried to read it. She testified that her one thought at that time was that she was only carrying out her agreement to convey the portion of the land that she had agreed to convey and that she had full and implicit trust in Hausten. After the deed was signed complainant continued to reside in the house upon the land. Mrs. Hausten testified that several months after the deed was executed complainant telephoned to her to come over to her house. On arriving there complainant asked Mrs. Hausten if she (complainant) had no more of the land left, and Mrs. Hausten, according to her testimony, having pity for complainant, did not enlighten her but suggested that her husband be sent for. When Hausten arrived complainant repeated her question and Hausten replied that she did not own any more of the land, that she had conveyed it all to him. Hausten then left, leaving Mrs. Hausten with complainant. According to Mrs. Hausten, when complainant was told this by Hausten, she said nothing but "hung her head." Mrs. Hausten then asked complainant why she had signed the deed, and whether she had understood its purport, also why complainant had not got one of her sisters to read and explain the deed to her.

It is not very clear from Mrs. Hausten's testimony whether complainant answered that she did understand the deed or that she .did not, for in this respect Mrs. Hausten's testimony is somewhat contradictory. Complainant said she had not taken one of her sisters with her because they were not on friendly terms.

This being an appeal in an equity suit the conclusion reached by the circuit judge on the evidence is not binding upon us. In this case, however, the evidence, which was chiefly oral, was conflicting, and the opinion of the circuit judge, who heard the evidence, saw the witnesses and noted their demeanor and manner of testifying, is entitled to much weight. The circuit judge emphatically intimated that in his opinion the testimony of Hausten was unworthy of belief and held that the deed of complainant conveyed a larger area than that agreed upon and that she had signed the deed in ignorance of its real contents and as a result of fraud practised upon her by the respondents. Although we have before us but the bare, cold transcript, sufficient appears therein to convince us that the circuit judge was quite justified in disbelieving much of the testimony of Hausten and in reaching the conclusion he did.

It is contended by respondents that the facts disclosed herein are not such as to entitle complainant to the relief prayed for. According to respondents, no fiduciary relationship existed between them and complainant; respondents were under no duty to advise complainant as to her rights; it was the duty of complainant to be vigilant in her own behalf and not to sign a deed without satisfying herself that the purport thereof was in accord with her own understanding and intent; that if she did sign the deed in this case without reading and understanding the same, she has but herself to blame, and equity will not decree her relief. With this contention

we cannot agree. This is not the ordinary case of negotiations carried on between parties who are *sui juris* and who deal at arm's length with each other. The evidence in this case· shows that complainant, an elderly woman, but little versed in the English language and without knowledge of business affairs, reposing the deepest confidence in respondents, who are her close neighbors and intimate friends, turns to them for advice and assistance. The respondent Emma Hausten, according to her own testimony, was anxious that her friend and neighbor, the complainant, should thoroughly understand the negotiations, and it was she· (Mrs. Hausten) who undertook to translate and explain to complainant the contents of the option that was signed by complainant. Respondents undoubtedly fully realized that complainant had implicit trust in them, for when asked why the alleged agreement to erect a cottage for complainant was not reduced to writing, the respondent Hausten stated that it was unnecessary because of the mutual trust the parties had in each other. It was to Hausten's attorney that complainant was led by Hausten for legal assistance. At no time during all of the negotiations did complainant rely upon her own judgment or seek counsel of others but placed her entire reliance and trust in the honesty and good faith of the Haustens. It was Hausten who had the deed prepared and who arranged the time when and place where complainant should sign it. It was Hausten who, in complainant's absence, informed the scrivener what property was to be conveyed and the consideration to be paid therefor. Under all the circumstances, while a more intelligent person might perhaps be said to have been negligent in not seeking outside advice, it cannot be said that complainant was not justified in the belief that all was well, and that her friends would not attempt to betray her. In the light of all the surrounding circum-

stances the complainant was warranted in the belief that the deed she was signing but expressed the agreement that she had made to convey to respondents only a portion, and not the whole, of her land. To say that equity is impotent to grant relief under the circumstances disclosed in this case is to impute to equity a weakness that it has not. That complainant has suffered a grievous wrong is not to be gainsaid and "equity will not permit a wrong to be without remedy."

It is contended by respondents that mere friendship between parties however strong does not create a fiduciary relationship and that unless a strictly fiduciary relationship existed between complainant and respondents in this case, complainant is not entitled to relief. The same contention was made in *Beach* v. *Wilton,* 244 Ill. 413, 91 N. E. 492. In disagreeing with that contention the court at page 422 said: "Counsel for defendants in error argue that a fiduciary relation, under the law, does not exist unless it grows out of the relation of administrator and heir, guardian and ward, attorney and client or principal and agent. Such is not the law. In Pomeroy's Equity Jurisprudence (vol. 2, 3d ed. sec. 956,) that author, in discussing this question, says: 'Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal. It may be moral, social, domestic or merely personal.' The rule as thus stated has been repeatedly quoted with approval by this court. (*Roby* v. *Colehour,* 135 Ill. 300; *Thomas* v. *Whitney,* 186

id. 225; *Walker* v. *Shepard,* 210 id. 100; *Irwin* v. *Sample,* 213 id. 160.) The fiduciary relation exists between parties where there is a relation of trust and confidence between them,—that is, where confidence is reposed by one party and the trust accepted by the other. In *Mayrand* v. *Mayrand,* 194 Ill. 45, this court said (p. 48) : 'The term fiduciary or confidential relation, as used in this connection, is a very broad one. · It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused,—in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, does such a relation in fact exist?' "

We are satisfied that the evidence in this case sufficiently shows that such a confidential relationship existed between complainant and respondents that justified complainant in relying on their integrity. Under the circumstances it was the duty of respondents to inform complainant candidly and fairly of the contents of the deed she was induced by their fraudulent conduct to sign, and respondents, having abused the trust and confidence reposed in them by complainant, it is unconscionable that the deed so artfully and wrongfully prepared by respondents, be allowed to stand.

The circuit judge held that complainant was entitled to participate in the proceeds of certain insurance funds collected by the respondent Hausten. It is contended by respondents that this holding was erroneous and that the decree appealed from should be reversed in this respect.

After the execution of the deed involved herein Hausten took out an insurance policy for $3000, payable to himself,

on the house on the premises occupied by complainant. Shortly thereafter the building was totally destroyed by fire and Hausten collected the whole amount of insurance from the insurance company. There was evidence tending to show that, at or about the time the agreement was reached between the parties that complainant should convey to respondents a portion of the land having a frontage of 100 feet, Hausten measured off the same and it was found that the boundary of the portion to be conveyed would include a part of the house. Although the evidence was not very clear as to the exact portion of the house included within the area to be conveyed, the circuit judge found, and the evidence justified such finding, that the boundary of the 100 feet frontage would take an entire one-half of the building. In other words, if the true agreement of the parties had been carried into effect, respondents would have become the owners of one-half of the building, and complainant would have retained ownership in the other half. The respondents had therefore an insurable interest in the building. The insurance policy taken out by Hausten was on the whole building. The circuit judge held that, when the insurance fund was paid to Hausten, he was entitled to one-half thereof, and complainant to the other half, less certain deductions, and that Hausten held her half as trustee for complainant.

In support of their contention that complainant is not entitled to participate in the insurance money collected by Hausten, respondents cite cases in which the relationship of mortgagor and mortgagee, vendor and vendee, etc., existed between the parties, in which class of cases courts have held that, where a party having an insurable interest in the property effects insurance on his own interest, the other party is not entitled to participate in the insurance collected. That is undoubtedly good law, but such cases are scarcely analogous to the instant case. According to

the finding of the circuit judge, which finding we acquiesce in, Hausten did not insure only his own interest but he also insured the half of the property to which we have held complainant equitably entitled. In other words, Hausten being the trustee of complainant, albeit only constructively so, the insurance placed by him on the equitable interest of complainant inures to the benefit of complainant. "One who holds property in trust for another and insures it as trustee holds the proceeds of the insurance as he would the property for the benefi- ciary." 26 C. J., 443. The situation is somewhat similar to that of insurance taken out on property by a life tenant. In such a case, if the life tenant insures only his own interest, the remainderman is not entitled to share in the insurance collected, but, if the life tenant takes out insurance on the whole estate, the remainderman is entitled to participate in the amount collected. The rule is thus stated in 26 C. J., 436: "One having only a life interest in property, but insuring that interest in his own right and at his own expense, is entitled to the proceeds of the insurance, and the remainderman has no claim on such proceeds. But where the policy insures the whole property and is made payable to the life tenant, in case of a loss the remainderman is entitled to the excess over the value of the life estate, * * * and it has been held in such case that where the entire loss is recovered by the life tenant, he holds the fund received as trustee for the remainderman." In *Sampson* v. *Bagley,* 44 L. R. A. (R. I.) 711, 716, the court said: "If a policy is issued to a life tenant for the full value of the fee, and this amount is recovered by him, he certainly ought to be held to be a trustee for the remainderman as to the excess of the amount received over the value of his life interest." See also *Welsh* v. *London Assurance Corp.,* 151 Pa. 607; *Brough* v. *Higgins,* 2 Gratt. (Va.) 408;

*Graham* v. *Roberts,* 43 N. C. 99. In *Haxall's Executors* v. *Shippen,* 10 Leigh (Va.) 536, it was held that where the title in an insured building is in a tenant for life and a reversioner, and the building is entirely destroyed, the property is in effect converted to personalty and the parties have a like interest in the insurance money that they had in the building.

The decree appealed from is affirmed.

*W. H. Heen* and *J. C. Kelley* for petitioner.

*C. M. Hite* and *Smith, Warren, Stanley & Vitousek* for respondents.