EMALIA HAAHAA AKIONA HEE, ALSO KNOWN AS E. HAAHAA, *v.* KAHIWA HEE CHUNG, ALSO KNOWN AS KEOHOHIWA.

NO. 2771.

ARGUED FEBRUARY 28, 1952.        DECIDED APRIL 15, 1952.

LE BARON AND STAINBACK, JJ., AND CIRCUIT JUDGE SAPIENZA IN PLACE OF TOWSE, C. J., DISQUALIFIED.

OPINION OF THE COURT BY STAINBACK, J.

This is a bill in equity brought by the petitioner-appellee, Emalia Haahaa Akiona Hee, also known as E. Haahaa, against her daughter, Kahiwa Hee Chung, also known as Keohohiwa, for the cancellation of a deed executed in 1942 of certain lands located at Kaneohe, Koolaupoko, described in Royal Patent 2042, Land Commission Award 1967, containing approximately 2.22 acres of land.

The petitioner alleges in substance in the amended petition that on January 9, 1942, being seventy-four years old, infirm, partially blind and incapable of attending to business, the respondent secured her signature to a certain deed conveying the property in question to respondent; that there was undue influence, fraudulent representation, no consideration and mutual mistake.

Petitioner was born in 1868 and was the foster child of Kahuakai and Haahaa; both the foster mother and petitioner herein were known as "Emalia Haahaa." The pleadings and the evidence show that on July 9, 1874, Kekua and her husband made a deed of the land in question to one "Emalia Haahaa"; that when petitioner was nineteen years old she married one Akiona Hee who died in 1940; that from 1890 petitioner continued to reside upon the land in dispute; that there were eight children as the result of this marriage, one of whom was the respondent herein and all of whom are now adults; that in 1880 Kahuakai and

his wife Haahaa, foster parents of Emalia Haahaa, executed a lease of this land to one Asui, the lease reciting that their foster daughter, Emalia Haahaa, then aged thirteen, was the owner of the land; that in 1890 petitioner's foster mother went to a lawyer and purported to make a conveyance of the land above described to the respondent because the petitioner's husband was not to be trusted financially. Petitioner was then under the impression that the land belonged to the respondent, which belief continued until 1948.

There is some conflict of testimony as to the circumstances under which petitioner executed the deed in 1942. Petitioner testified that respondent came to take her for a ride and carried her to the lawyer's office on two or more occasions and told her to sign this paper, that it was "good"; that she did not know what was in the document, and that the only explanation ever made to her regarding her rights in the property was that she "might" have some claim through adverse possession to this land.

Petitioner continued to reside on the land until 1948 when respondent had bulldozers brought to level the land and apparently to subdivide it, claiming that she, the respondent, owned the land; petitioner objected and thereupon had a search of title made; at that time she ascertained that she was the owner of the land by the conveyance of 1874; that had she known she was the legal owner of said land she would not have signed any deed of the land. This suit for cancellation of the deed followed.

One of the questions raised in the court below was whether the deed of 1874 to "Emalia Haahaa" was to petitioner's foster mother Emalia Haahaa or to petitioner Emalia Haahaa. The court found that the deed was to the petitioner herein and this is amply sustained by the evidence that in 1880 Kahuakai and his wife, Haahaa, foster parents of the petitioner herein, recited in the lease of this land to Asui that their foster daughter, Emalia Haahaa,

then aged thirteen, was the owner of the land in question. The trial court also found that there was mutual mistake as to the ownership of this land and that the mistake was a material matter which justified rescission of the 1942 deed from petitioner. This is sustained by the evidence; in fact, from the confidential relation existing between the parties, from the age, physical handicaps, lack of education and business experience, and the fact that this was an unnatural disposition of petitioner's property, there being no reason to favor respondent over the other children, and if, as the trial court found, we give credit to plaintiff's testimony, it appears that undue influence was exercised by respondent and that the petitioner never intended to deprive herself of the property in question, as she apparently thought no disposition would be made until after her death.

The jurisdiction of equity to cancel such instruments is thus stated in section 32, 9 American Jurisprudence 377: "The jurisdiction of equity to decree the cancelation of an instrument because at the time of its execution the parties, or even one of them, labored under a mistake of fact, provided that such mistake is material to the transaction and affects the substance thereof, rather than a mere incident or the inducement for entering into it, is well recognized and frequently invoked, especially if an element of fraud is present, or a confidential relation exists. * * *"

Section 45, 16 American Jurisprudence 466, states it as follows. "* * * Courts in this country regard a mistake as to the title or ownership of land embraced in a deed as a mistake of fact against which equity will relieve although the mistake arises from an erroneous view of the legal effect of a deed in the chain of title.

"Where one in reliance upon the advice of another as to the extent of his title, interest, and rights in property executes a conveyance thereof or where one executes a conveyance upon the advice of another as to its legal effect,

the conveyance may be avoided upon discovery of a mistake on the part of the person upon whose advice the grantor relied. * * *" (See also 26 C. J. S. 272 and 282.)

In the case of *Keanu* v. *Kamanoulu*, 20 Hawaii 96, the court quotes as follows: " 'Wherever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no such confidential relation had existed.*' (Pom. Eq. Jur., Sec. 956)."

Other Hawaiian cases dealing with undue influence by one in a confidential relation to a grantor of property are: *Furtado* v. *Rezents*, 33 Haw. 569, 571; *Hall* v. *Winam*, 14 Haw. 306; *Meheula* v. *Hausten*, 29 Haw. 304.

When we consider that the mistake of fact was based on statements of and persuasion by the respondent herself, upon whom petitioner might naturally and properly rely, and that there was no consideration other than love and affection, it is not easy to assume that the petitioner intended to convey an absolute title to the respondent herein, depriving herself of property upon which she had resided for fifty years, and at the expense of her other children.

Decree affirmed.

*W. G. Chuck* (*Fong, Miho & Choy* with him on the briefs) for appellant.

*W. Y. Char* (also on the briefs) for appellee.