## LIKEPA KEANU AND W. B. KEANU *v.* HATTIE KAMANOULU.

### APPEAL FROM CIRCUIT JUDGE, SECOND CIRCUIT.

SUBMITTED FEBRUARY 17, 1910.  DECIDED MARCH 5, 1910.

HARTWELL, C.J., PERRY AND DE BOLT, JJ.

FRAUD—*in fact as well as in law.*

> Where a daughter obtains a deed from her aged parents for land without consideration, other than their affection for her, the understanding on their part, induced by her, being, that she only intended to mortgage the land to raise money with which to pay off a mortgage on her land, and that they would not be deprived of or in any way molested in the use thereof, but the intention of the daughter being to acquire full control of the land and to sell the same for her own use and benefit, and thus deprive her parents of the use and enjoyment thereof, presents a case of fraud in fact as well as in law relievable in equity.

OPINION OF THE COURT BY DE BOLT J.

This is an appeal from a decree dismissing plaintiff's bill filed by them to secure the cancellation of a deed and for the reconveyance of the property therein described on the ground that the same was procured from them by the defendant through fraud.

The facts averred and supported by the evidence are substantially as follows:—

That the plaintiffs are husband and wife, and the parents of the defendant; that they reside in Wailuku, on the premises in question, where they have had and have maintained their

home during forty-five years last past; that they are respectively of the ages of sixty-three and seventy-three years; that they have had but little experience in business matters; that they speak no language but the Hawaiian; that the defendant, for some years last past, has resided in Honolulu; that on July 7, 1909, and long prior thereto, the plaintiffs had a life interest in the said premises,—the defendant holding the fee therein; that the area of said premises is about 4.90 acres, and, in addition to the use of the same by the plaintiffs as their home and for growing vegetables and other products thereon, they also receive therefrom about $300 per annum as rental; that said premises constitute the principal means of livelihood available to plaintiffs; that a few days before the execution of the deed in question, the defendant arrived in Wailuku from Honolulu, and very soon thereafter represented to plaintiffs that she was in need of $2000.00, or thereabouts, with which to pay off a certain mortgage on her Honolulu property, which mortgage was about to be foreclosed; that she proposed to her father and mother that they execute a deed to her thereby releasing their life interest in the premises in question to her so that she could then give a mortgage thereon for the purpose of raising money with which to pay off the Honolulu mortgage, and thus save her property, otherwise she would lose it; that her purpose was, as she said, only to mortgage the property in question and not to make any other use or disposition of it; that she led them to believe that even if they deeded their interest to her they would not be deprived of or disturbed in the use or possession of the premises; that plaintiffs might, as she assured them, safely put their trust in her; that plaintiffs placed full faith and confidence in defendant's representations, and relying upon her intention and ability to so use the property, and intending merely to place within defendant's hands the means whereby she might save her Honolulu property from sacrifice without impairing their enjoyment of their property, they did, on the 7th day of

July, 1909, execute and deliver to defendant the deed in question, without value or consideration of any kind.

Very soon after, if not before, the execution of the deed defendant entered into negotiations for the sale of the property, and within ten days thereafter she actually entered into a contract with one J. K. Kahookele for the absolute sale thereof for $3300, receiving thereon the sum of $50. The consummation of this sale, however, has been stayed by order of the circuit judge pending this appeal.

The defendant is about forty years of age. She is quite well educated in English, understands and speaks English very well and is a woman of strong will, resolute, shrewd and positive. She has had some experience in business and in court proceedings.

The circuit judge, after a somewhat elaborate and analytical review of the evidence, as well as the making of numerous findings of fact—all adverse to defendant and favorable to plaintiffs—concludes as follows:—

"Notwithstanding the hardship upon the plaintiffs and the apparent probability that they will be rendered homeless in their old age, that an unloving and unworthy daughter will soon use up what money she can get by a sale of their home, still the court does not know of any law that will relieve the parents of the consequence of their own folly in doing and intending to do what they did do for the benefit of an ungrateful and selfish child. The court finds that the plaintiffs intended to give the defendant the power which the instrument in question gave her and that the fact that it was foolish for them to intend this and to do this does not warrant the court in making a new contract for them or of annulling the contract which they made and intended to make, however much the pity and the justice their complaint appeals to the heart and feelings of every right minded person.

The court regretfully concludes and finds that it can give no relief to the plaintiffs and that this suit must be and hereby is dismissed."

We cannot concur in the conclusion thus reached by the learn-

Keanu v. Kamanoulu, 20 Haw. 96.

ed circuit judge. The record before us, as we view it, presents a case which most clearly and emphatically demands the exercise of that remedial power which equity has placed in the hands of the Chancellor for the very purpose of undoing and annulling such unconscionable transactions and betrayal of confidence and trust as the defendant is shown to have done in obtaining the deed in question and in her attempt to dispose of the property absolutely. The transaction is one that equity cannot uphold.

It is clear from an examination of the record that defendant acted in bad faith and her representations to plaintiffs were made with intent to deceive. A significant circumstance tending to show bad faith on her part was her objection to plaintiffs joining in a mortgage with her instead of their executing the deed to her. This circumstance alone tends to show that it was her purpose to acquire full, complete and absolute control of the property, and to sell it, being a purpose entirely different from that which she had stated to her parents.

Counsel for the defendant contends that even if the allegations of fact contained in the bill were established by the evidence, plaintiffs could not recover, and that the suit was properly dismissed, because, as he argues, it is a cardinal principle that no one has a right to rely upon what another says he intends to do; that the mere making of a promise to do something in the future does not constitute fraud, even though the promise was made in bad faith; and that, therefore, the promise of defendant to only mortgage the premises in question and not to make any other use or disposition thereof, is not a fraud cognizable in a court of equity. Whatever application this doctrine may have in other cases, we do not think it applies in the case before us. We are not now dealing with a question which only involves the violation of a bare promise between parties dealing with each other on an equal footing or at arms' length. The questions presented for our consideration

are those which concern parties to a transaction between whom there exists that relationship which the law terms confidential. The record before us shows that the relationship between the plaintiffs and the defendant was confidential in fact as well as in law, and that both actual and constructive fraud has been committed in this case.

Upon the question of constructive fraud, Bigelow on Fraud, (Vol. 1, p. 261), says:

"When a party, complaining of a particular transaction, such as a gift, sale, or contract, has shown to the court the existence of a fiduciary or a confidential relation between himself and the defendant, and that the defendant occupied the position of trust or confidence therein, the law raises a suspicion or, it is often said, a presumption of fraud."

In *Brison* v. *Brison,* 75 Cal. 525, a deed was executed by a husband to his wife, upon an oral promise by her that she would reconvey the property upon request. The promise by which the husband was induced to make the deed was in bad faith and false, and "made with intent on her part to deceive, and did deceive, the husband." The lower court gave final judgment for the defendant upon demurrer; the plaintiff appealed and the supreme court reversed the judgment, with directions to overrule the demurrer. The court in that case at page 527, say:

"We think there was actual fraud. As above stated, the complaint shows that the parol promise upon which plaintiff relied was false and 'in bad faith,' and 'made with intent to deceive.' The construction which we think must be given to this averment is, that the promise was made without any intention of performing it. This is a well-recognized species of fraud * * * It is to be observed of this ground that the essence of the fraud is the existence of an intent at the time of the promise not to perform it. But for such intent there would be no actual fraud. For it is well settled that the mere failure to fulfill a promise is not fraud. * * *"

Again, at page 528, the court say:

"But if the evil intent existed, there was actual fraud, and

Keanu v. Kamanoulu, 20 Haw. 96.

so far as this ground is concerned, it is immaterial whether there was a confidential relation or not (*Christy* v. *Sill,* 95 Pa. St. 387). But if the intent not to perform, above referred to, had not been averred we think the plaintiff is nevertheless entitled to relief upon the other facts alleged, on the ground of the confidential relation existing between the parties."

And again, at page 529, the court say:

"The relation of the parties to each other, therefore, was confidential in fact as well as in law. The plaintiff was induced to make the deed by the confidence which he had in his wife, and the belief thereby engendered that she would perform her promise. But for that he would not have made it.

The betrayal of such confidence is constructively fraudulent, and gives rise to a constructive trust. This is independent of any element of actual fraud."

The doctrine applicable to transactions in which confidential relations are involved, is thus stated by Pomeroy:

"Wherever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no such confidential relation had existed."* (Pom. Eq. Jur., Sec. 956).

The court in *Bohm* v. *Bohm,* 9 Colo. 100, 109, commenting upon the doctrine as above stated by Pomeroy, say:

"No illustration of the above rule can be stronger, than where an imposition has been practiced upon one party by the other, through confidence generated by the close ties of kindred—as that of parent and child. This is a relation in which the most implicit confidence is usually reposed in the good faith of each other, and, by reason of this intimate relation and confidence, the precautions which would usually be observed in other cases are often omitted, giving opportunities for the practice of imposition which would not be otherwise obtained. When children are of tender years, or inexperienced in matters of business, they may be thus imposed upon by their parents. Again,

when the parents become aged, or in dependent circumstances, the situation of the parties becomes reversed, and the like imposition may be practiced, and advantage taken of them, by their children."

In 14 Am. & Eng. Ency. Law, 49, it is said:

"In ordinary cases, the general rule that failure to perform a promise is not fraud is recognized in equity as well as at law. But there are many cases in which a court of equity, to prevent fraud, will grant relief in the case of a mere failure to perform promises, the failure to perform the promise being regarded, under the particular circumstances, as a fraud in equity.

By the weight of authority, if a person, by means of a parol promise to reconvey, obtains an absolute conveyance without consideration, or a devise, from one to whom he stands in a fiduciary or confidential relation, a violation of the promise is a constructive fraud, and ground for holding him as a constructive trustee, although there may have been no intention not to perform at the time of the promise."

See also *Newman* v. *Smith,* 77 Cal. 22; *De Mallagh* v. *De Mallagh,* Id. 126; *Broder* v. *Conklin,* Id. 333; *Becker* v. *Schwerdtle,* 141 Id. 386; Pomeroy, supra, Secs. 955, 957; Bispham, Prin. Eq., Secs. 231, 235; 20 Cyc. 9, 34; *Jerome* v. *Bohm,* 21 Colo. 322; *Fischbeck* v. *Gross,* 112 Ill. 208; *Rozell* v. *Vansyckle,* 11 Wash. 79; *Meldrum* v. *Meldrum,* 11 L. R. A. 65.

We are clearly of the opinion that the plaintiffs are entitled to the relief prayed for, and that the dismissal of their bill was erroneous.

The decree dismissing plaintiffs' bill, therefore, is reversed, and the cause is remanded with directions to the circuit judge to order a reconveyance and to grant such other relief as may be appropriate.   Defendant to pay all costs.

*C. W. Ashford and A. N. Kepoikai* for plaintiffs.

*Atkinson & Quarles* for defendant.