# Holland v. Pearson et al.

(Decided Dec. 14, 1937.)

HARLIN & COLEMAN and WILSON & VINCENT for appellant.
MILLIKEN & MILLIKEN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

The appellant, plaintiff below, brought this action in the Warren circuit court to recover of appellees one Chrysler automobile. Briefly stated, the substance of the allegations of the petition is that on October 11, 1935, plaintiff purchased of the Allen Motor Company a secondhand Dodge automobile for which she paid $275; later, December 16, 1936, she traded the Dodge automobile for the Chrysler and paid the Allen Motor Company $750 difference between the price of the two automobiles; that at the time of the purchase of the

Chrysler automobile, plaintiff allowed the defendants to register it in the name of the defendant, Amie Pearson, and the car is in the possession of the defendants and being used by them for their personal use and against the will of the plaintiff, and plaintiff has made demands of defendants to transfer the title to the car to the plaintiff, which they have refused to do, and "that she is due and owning possession of the car." She prayed judgment against defendants in the sum of $1,200, the alleged value of the car, and for an order of delivery of the same.

The defendants filed a general demurrer to the petition, and without waiving same they filed their answer denying the allegations of the petition, and pleaded affirmatively that when plaintiff purchased the Dodge automobile on October 11, 1935, she transferred the title to it to the defendant, Robert Pearson, "in consideration of the services and kindness given to the plaintiff by the defendants, Robert Pearson and his wife, Amie Pearson." Defendants further alleged that on the 16th day of December, 1935, Robert Pearson traded the Dodge automobile to the Allen Motor Company for a Chrysler, 1936 model sedan, and that the plaintiff paid the Allen Motor Company $750, the balance due on the Chrysler automobile, in addition to the price of the Dodge, and had the title to it transferred to the defendant Amie Pearson, "in consideration of the services performed by the defendants, Robert Pearson and Amie Pearson for this plaintiff," and that the title to the Chrysler automobile was transferred to Amie Pearson by bill of sale made on December 16, 1935, signed by the Allen Motor Company and acknowledged before a notary public; that on January 17, 1936, the Chrysler automobile was duly registered and licensed in the name of Amie Pearson, and that the said automobile is the property of Amie Pearson and the plaintiff has no interest in same.

The affirmative allegations of the answer were not controverted by reply or otherwise, but, so far as the record discloses, that question was not raised in the lower court and all party litigants and the trial court treated the answer as having been controverted and the case was tried on the issue of ownership of the car. In such circumstances, this court will likewise treat the answer as having been controverted.

Appellant testified that she paid $275 for the Dodge

automobile, and traded it for the Chrysler in question, and paid $750 difference. She said that she did not take the bill of sale in her name because she never had bought a car and did not know anything about such transactions, and that Robert Pearson took the pen out of Allen's hand and signed the bill of sale, and that she was not even asked to sign it. She was asked when was the first time Pearson claimed the car, and she answered:

"He claimed it all the time, I think. I never had given it to him. I always called him my chauffeur, and I always called it my car."

She was asked about work and favors the defendants had done for her, and she said that she paid them for everything they had done for her before she bought the car, and that they drove her in the car to various places, but she bought the gas when she took long trips. She said that Robert Pearson was employed at the fire station, but was off one day in the week and drove her in the car, sometimes long distances, and on one occasion took her to Lebanon, Tenn.

On cross-examination plaintiff testified that before the purchase of the Dodge car defendants owned an old car and took her riding in it occasionally, but she insisted that they always got paid for it, and that she was always giving them something. She admitted that Robert Pearson went on errands for her, such as looking after her banking business, etc., and various other things, but she said she paid him for all he did. She said that Amie Pearson came to her home and stayed with her and performed certain services for her, such as cutting and washing her hair, but that she paid Mrs. Pearson for all she did for her, and on one occasion she gave her a $25 gold watch. She admitted that on various occasions defendant took her places in his old car which he owned before the purchase of the Dodge car, but further said that she did not want to go anywhere in his "old wrecked up car," and that is the reason she bought the other cars. This is all the evidence offered by plaintiff relating to the transaction. However, her counsel introduced certain other witnesses by whom he attempted to prove plaintiff's physical and mental condition. The court admitted the evidence relating to her physical condition, but rejected all proof relating to her mental condition upon the ground that mental incapacity was not pleaded. This is one of the alleged errors

complained of in the motion and grounds for a new trial and insisted on in brief of appellant. The issue made by the pleadings was whether the plaintiff gave to defendants the automobile in question because of the services rendered to her, and various acts of kindness toward her. As we have already stated, the failure of plaintiff to reply to defendants' answer, and all parties having treated the issue as complete, the answer will be treated as controverted only. But we cannot go further and infer any affirmative matter. Plaintiff alleged in her petition that she had the automobiles registered in the name of defendants for the convenience of herself and defendants; but there is no allegation that plaintiff was mentally incapable of transacting business.

The defendant Robert Pearson testified that he had known Mrs. Holland, the plaintiff, for about eight or nine years, and that they lived near neighbors in the city of Bowling Green and during that time they had been close friends. He was asked to enumerate various things that he had done for the plaintiff, and he said:

"Well, she would have me to come down town and do different things for her. I would look after her houses for her. I collected the rent and took her money to the bank. I have carried her out to the cemetery every time she would want to go, on my days off. My wife would give her flowers. There was something for me to do every day I was off. There wasn't a day, hardly, for the last—I will say for the last year—that I haven't done something for her."

He further testified that he took the plaintiff on various trips and anywhere she wanted to go, and made no charges for it, and that she never paid him anything; that his wife (Amie Pearson) attended plaintiff when she was sick and "waded through that snow last winter (1936) sometimes twice a day about 4½ blocks to get to her house." He said that he owned an old car before the plaintiff purchased the Dodge car, and he took the plaintiff various places in his car; anywhere she wanted to go. He said that plaintiff claimed that she had $8,000 in a bank at Lebanon, Tenn., and he took her to Lebanon and made no charge for the trip, and that she paid him nothing for it. He further testified to various other like and sundry services, too numerous to set out in detail.

In regard to the Dodge automobile, he said the

plaintiff was the first one to mention buying it; that they had been out on a trip in his old car and had a little trouble with it, and the plaintiff said to him,'' Mr. Pearson, I been aiming to give you all something, and I am going to make you a present of an automobile.'' This was about two or three weeks before she purchased the Dodge. Leading up to the purchase of the Dodge, car, he said:

"She says, I want—No, she asked me if I had seen that car up at Mr. Allen's. We come by there that afternoon and she says, 'There sets a mighty nice car over there now.' That was the Dodge. She said to me one morning, 'Have they sold that car?' And I said, 'No Ma'am, it's still down there.' She says, 'You carry me down there,' and I carried her down there and she bought the automobile. We drove her out the Russelville Pike to Jackson's crossing, and back to town.''

He said this conversation occurred in the presence of Mr. Allen, of the Allen Motor Company, and Mrs. Holland said to Mr. Allen:

"I want to buy him this car now, and later on I'm going to buy him a nicer car. And she would have bought the new one on the start, but I told her she could make more by buying a second hand car at first and trading it in.

"Q. Did she tell Mr. Allen why she was buying you the car? A. She said we had been so kind to her and so good to her and doing things for her, she just wanted to make us a present of that automobile.''

He further said that plaintiff told Mr. Allen to make the bill of sale for the car to him (defendant). He denied that he took the pen out of Mrs. Holland's hand and signed the bill of sale, and that Mr. Allen signed the bill of sale in plaintiff's presence and at her request. He said he went to the clerk's office and had the car licensed in his name and built a garage on his premises and put the car in the garage; that there were no conditions to the gift, and the car was turned over to him as his property. He said that the plaintiff was the first one to mention the purchase of the Chrysler automobile.

"Q. What did she say about that? A. She said to me one day, she says, 'Don't you think it's about time we ought to trade this car in?' I said 'Yes, I think it

would be a good time right now.' She says, 'Well, you go down to the garage and have Mr. Allen make a bid on this car.' ''

He said he went to the garage and the men at the garages made him prices on various cars, including the Chrysler, which the plaintiff later selected. He said he suggested that they buy a Plymouth, and plaintiff said, ''No, we'll buy the Chrysler,'' and she told Mr. Allen to make the bill of sale in his wife's (Amie Pearson) name, and he transferred the Dodge car to Mr. Allen as a part of the consideration for the Chrysler, and the plaintiff paid the balance on the purchase price of the Chrysler, and made the statement that she was giving them the car ''because we had been so kind to her and done so much for her,'' and soon after the bill of sale was made he went to the courthouse and had the car registered in his wife's name. He also said that he listed the car with the assessor for taxation on January 10th, following the purchase of the car.

Defendant was asked if plaintiff got mad at him and his wife at any time, and he said she did some time in the following April. But it appears that her grievances grew out of the fact that the check which she gave for the difference between the price of the Dodge car and the Chrysler was paid out of the trust fund plaintiff had in the bank instead of her personal fund, and she became angry with her banker because of this mistake, and carried this grievance back to the defendants. But it is not shown that the defendants were in any way responsible for the error. Defendant further said that plaintiff also objected to him and his wife, codefendant, going to see his wife's mother (who lived in Allen county) when she was ill. He was asked if he thought that he and his wife had earned the car, and he answered:

''I do, yes sir. I don't feel like it's a present at all to me. For the last seven years practically every day I was off I had her out. We carried her to Bardstown, to her brothers, and to Louisville, and just different places where we went, and on trips.

''Q. Did you ever take her to Louisville? A. Yes sir, I did. I carried her the next day, the day that I bought the car.''

On cross-examination he was asked if plaintiff paid the gasoline bills when he drove her on trips, and he

said that she did not, and that he had receipts to show that he paid for the gas. He denied that plaintiff gave Amie Pearson the gold watch referred to in her testimony, but said that she gave it to his little boy.

Defendant was cross-examined at length concerning various things that he testified to in chief, but his evidence on cross-examination is consistent with his direct examination, and does not tend to change the import of it. On redirect examination counsel asked him about plaintiff requesting him to get certain receipts evidencing payment of the car, and he said:

"Mrs. Holland told me—I didn't get that last receipt the day I got the Chrysler. She asked me one day, 'Did you get the receipt on that last car?' I says, 'No ma'am, I didn't.' She says, 'I want you to go get it.'

"Q. Why did she want you to do that? A. She says, 'If I was to die or if anything should happen to me, I want you to have those receipts to show that the car is paid for.' If any of her heirs, you know, come in and claimed the car I would have the receipts to show that it was paid for.

"Q. To show it was your car? A. To show it was my car, yes sir."

The defendant, Mrs. Pearson, detailed in her evidence various services and personal favors that she and her husband had rendered to plaintiff along the line of that testified to by her husband, codefendant. She testified that when the Dodge car was purchased in October, 1935, plaintiff said that she was giving them the car because they, defendants, had been so good to her, and plaintiff further said: "I've not started to give yet—I'm going to get you a better one." She said plaintiff was present when the bill of sale was made to the Dodge car, and at plaintiff's request Mr. Allen made the bill of sale to Robert Pearson. In regard to the gold watch, she said the plaintiff said that she gave the watch to her, defendant's, little boy. She said she made no charges for anything she did for plaintiff and did not expect any pay for it, and received no pay except that plaintiff gave her certain articles which she had discarded and did not need and perhaps would have given them to some one else; that plaintiff had no relatives in town, and she looked after her and did all the things enumerated gratuitously.

F. E. Allen, of Allen Motor Company, who sold the two cars in question, testified that the defendants and plaintiff came to his garage and discussed the purchase of a car, and they agreed on the sale of the Dodge, and later plaintiff came back and gave him a check for $275 for the Dodge and told him to make the bill of sale to Robert Pearson, which he did.

"Q. Did she tell you why she was giving him this car? A. She said they had been nice to her and she felt she should do something for them, and for that reason she was going to buy them a car, because they were still carrying her around and she had no way of going without their assistance."

"Q. Did she tell you at that time that she wanted to buy them a new car or a better car, and that she was going to do it? A. She mentioned that, but at that time Mr. Pearson thought the used car would be all right; but later they decided to buy the new car."

He said that when he went to see plaintiff about the sale of the Chrysler, she said:

"The car that they had wasn't exactly what she thought they wanted, and she felt that they should have a better car. She said, 'they'. She didn't say who, but I took it for granted she was referring to the Pearsons."

He said that later plaintiff and defendants came to the garage and purchased the Chrysler car, and plaintiff told him to make the bill of sale to Mrs. Pearson. He was asked if Mr. Pearson took the pen away from him and signed the bill of sale, as stated by the plaintiff, and he said he did not do so, and that he, Allen, signed the bill of sale himself, and it was all in his handwriting.

On cross-examination Allen was asked if he thought he was selling the Pearsons the car or selling it to Mrs. Holland, and he said, "I was under the impression that she was giving them the car. That's what she said." It was shown by the county assessor and county clerk that in January, following the purchase of the Chrysler in December, defendants listed the car with the assessor for taxation and also registered it in the county clerk's office in the name of Mrs. Pearson.

Charlie Howell testifying for defendants, said that

he had a conversation with plaintiff in regard to the Dodge. car, and he detailed the conversation as follows:

> "Well, they was all three of them (meaning defendants and plaintiff) out there in the car, and I was out about the barn and Robert wanted me to go out and look at the car, and he says, 'I want you to meet Mrs. Holland.' Well, when I went in, she says, 'Have you been out to look at Mr. and Mrs. Pearson's car?' * * *

> "She asked what I thought of it, and I says, 'It's mighty nice.' I says, 'Well, I wish somebody would make me a present of that kind.' 'Well,' she says, 'they been nice and good to me, and I wanted to get them something nice,' and she then made the remark that she wanted to get them a better one, but they seemed to be pleased with that one."

John Moltenberry, chief of the fire department of Bowling Green, testified that plaintiff came to the fire station and was talking to him about the new car that she had purchased for defendants, and bought seat covers for it, and gave Mr. Pearson money to pay for the seat covers, and he understood her to say that she had "bought Mr. and Mrs. Pearson this car."

It is insisted for appellant, plaintiff below, that the testimony of the defendants relating to the gift of the car was incompetent, and the court erred in admitting such evidence to the jury because that in defendant's answer they pleaded that they purchased the car of plaintiff and that all evidence relating to a gift was a departure from the pleadings. It is alleged in the answer that plaintiff transferred the title to the Dodge to Robert Pearson in consideration of services and kindness given the plaintiff by defendants, and a like allegation is made relating to the Chrysler car. It is at once obvious that the evidence of defendants and their other witnesses is in harmony with the allegations of the answer. It is shown by all the witnesses for defendants that plaintiff stated that she was giving defendants the car because, they had been driving her around and taking her places, because they had been so kind and nice to her, and various other similar expressions.

It is our conclusion that the evidence clearly shows that plaintiff voluntarily and of her own free will and

accord purchased both automobiles in question, and at her instance and request the bills of sale to the respective automobiles were made to the defendants and were delivered to them, which they accepted and took charge of them absolutely and without any reservations or conditions attached thereto. It may be true, however, that the transaction was more in the nature of a gift rather than of purchase and sale, but it is clear that the motive or reason prompting plaintiff to make the gift was the services and kindness of defendants, which is in harmony with defendants' pleadings.

Lastly, it is complained that instructions Nos. 1 and 2, given to the jury, were erroneous. The instructions read as follows:

"No. 1. If the jury believe from the evidence that the plaintiff, Maggie Holland, did not give and deliver, or have delivered, to the defendant, Amie and Robert Pearson, a Chrysler car, with the intention to make an absolute gift of said automobile to the defendants, and to put the defendants in absolute control and actual possession of said car; but merely put the title and possession of said car in the defendants as a matter of convenience to herself and to the defendants, so that the defendant, Robert Pearson, could drive plaintiff around in said car when she so directed, then there was no gift of said car by the plaintiff to the defendants, or either of the defendants, and the law is for the plaintiff and the jury will so find.

"No. 2. If the jury believe from the evidence that the plaintiff, Maggie Holland, gave and delivered, or had delivered to the defendants, Amie and Robert Pearson, or either of them, said Chrysler car, with the intention to make an absolute gift of said car to the defendants, and did put the defendants in absolute control and actual possession of same, and that the defendants accepted said car as an absolute gift, and took absolute possession and control of said car, then there was a gift of said car by the plaintiff to the defendants, and the law is for the defendants and you will so find."

It is our view that the instructions are substantially correct and fairly presented the issue.

The further complaint is that the court should have given certain instructions offered by plaintiff, but hav-

ing concluded that the instructions given are correct, it is not necessary to discuss the offered instructions which were rejected by the court. The sufficiency of the evidence to sustain the verdict cannot be doubted. It appears to us that the preponderance of the evidence is to the effect that plaintiff gave the defendant Amie Pearson the automobile in question, and the transaction was in harmony with the rules of gifts inter vivos, and the defendant took title to the automobile.

Judgment affirmed.

Whole court sitting.