PAUL TEIXEIRA, ETHEL TEIXEIRA, LOUISA TEIXEIRA OLIVEIRA, BELINDA TEIXEIRA PERREIRA, FLORENCE TEIXEIRA GUERRERO AND JOE TEIXEIRA, JOSEPHINE TEIXEIRA, AUGUST TEIXEIRA, VIOLET TEIXEIRA, GLADYS TEIXEIRA, JOHN TEIXEIRA, GIL- BERT TEIXEIRA AND PATRICK TEIXEIRA, MINORS, BY PAUL TEIXEIRA, THEIR UNCLE AND NEXT FRIEND *v.* ANTONE TEIXEIRA AND ANNIE TEIXEIRA.

NO. 2890.

Argued December 10, 1954.        Decided January 11, 1955.

Towse, C. J., Stainback, J., and Circuit Judge McKinley in Place of Le Baron, J., Disqualified and Absent.

OPINION OF THE COURT BY STAINBACK, J.

This is a bill in equity to cancel a deed upon the grounds of fraud and undue influence or in the alternative to declare the grantee therein a constructive trustee of the premises conveyed for the benefit of the heirs at law of the grantor, that is, the grantor's two sons, including the grantee, the grantor's daughter, and the children of a

deceased son of the grantor. It also asks for an accounting and general relief.

The deed dated April 29, 1935, is from Jose Teixeira to his son Antone Teixeira conveying certain property in the Kapiolani tract, Kalihi, Honolulu, with improvements thereon, subject to a life estate in the grantor.

Prior to this deed, a deed dated April 26, 1935, from Jose Teixeira's children (Antone, Paul, Louisa and John) to their father, Jose Teixeira, conveyed to the latter a portion of lot 8, block 7 of the Kapiolani tract, being a portion of the land included in the deed of April 29 hereinabove referred to. The consideration expressed in both deeds was love and affection.

The deed from the children conveyed property which had been owned by Gilhemina Teixeira, the wife of Jose Teixeira, who predeceased her husband and left a last will and testament devising her property to her husband, but her will had never been probated and the statute of limitations for the probating of the will had expired prior to the execution of the deed from her children to their father.

Gilhemina Teixeira died in 1928. The issue of the marriage of Jose and Gilhemina were Antone, Paul, John, and Louisa Oliveira, all of whom survived the mother and all except John survived their father. John died on May 2, 1935, leaving ten surviving children. Jose Teixeira, the father, died January 30, 1937, intestate, leaving as his heirs at law Antone, Paul, Louisa and the children of his deceased son John.

The petition charged fraud and undue influence by Antone Teixeira in securing the execution of the deed of April 26, 1935, it being alleged that false representations were made by Antone Teixeira to the four children of Jose Teixeira and their wives to the effect that upon the death of the grantee, Jose Teixeira, his four children or their

issue by right of representation would share equally in the estate of said Jose Teixeira either under his will or under the laws of descent of the Territory, whereas in truth and in fact the said Antone Teixeira at and prior to the time of the execution of said deed was secretly and unknown to his father and his brothers and sister scheming to secure from his father an absolute deed to him of the property subject to such deed, as well as all of his said father's property, all this upon the theory that the deed of April 26, 1935, and that of April 29 following were parts of the same scheme and transaction; that false representations were made by Antone to his father Jose to the effect that the deed of April 29, 1935, was a trust instrument whereby the grantee was creating a trustee of all the property of the said Jose Teixeira at the latter's death for the purpose of distributing the same equally to his children, Antone, Paul and Louisa, and the children of his son John (who died on May 2, 1935); it further sets out that undue influence was presumed to have been exerted by Antone Teixeira upon his father Jose Teixeira by reason of conditions and circumstances of said Jose Teixeira existing at the time of the execution of the deed of April 29, 1935, namely, his mental weakness, his illiteracy and weakness, his lack of independent advice, and the fiduciary relation already existing between himself and his son Antone.

The respondents filed separate answers of general and special denial of charges made, and the issues as presented by the pleadings were decided by the trial judge, Le Baron, in favor of the respondents; upon appeal to this court the decree was reversed and the cause remanded for a new trial, the grounds of the reversal being that the trial judge had refused to consider parol evidence tending to invalidate the deed, this court holding that the trial judge should have considered declarations of the donor, since deceased, showing or tending to show the state of mind

of the donor at the time he made the deed; that such declarations were an exception to the hearsay rule, both those made prior to the deed and those made subsequent to the deed, if tending to show his mental condition at the time of making such deed.

In commenting on the lower court's refusal to consider declarations made prior and subsequent to the deed, this court said: "It appears from the evidence, and it is not disputed by the respondents, in fact it is admitted by them, that Jose Teixeira prior to April 29, 1935, the date of the execution of the second deed, made statements and declarations in substance and to the effect that upon his death his four children or their issue by right of representation would share equally or substantially equally in his estate and that his eldest son Antone had been authorized by him to effect its distribution accordingly. It also appears in evidence, although denied by respondents, where the statement or declaration was allegedly made to them or either of them or made in their or either of their presence, that Jose Teixeira made similar statements and declarations subsequent to the execution of the second deed, repeated up to the time of his death.

"There were also introduced in evidence statements and assertions made by Jose Teixeira both prior and subsequent to the execution of the deed of April 29, 1935 * * * corroborative of his intentions otherwise completely expressed. These statements, declarations, and assertions, occurring both before and after the execution of the deed of April 29, 1935, were made in some instances directly to Antone; in some to his other children and his daughter-in-law Ethel in the presence of Antone or his wife or both and in some instances to his children and his daughter-in-law Ethel and friends separately in the absence of both Antone and his wife." (*Teixeira et al.* v. *Teixeira,* 37 Haw. 64, 68.)

The case was retried to a large extent upon the same testimony of the same witnesses with additional witnesses for the petitioners.

We shall not attempt to review the evidence in detail; in fact it is impossible to make such a review as the testimony of several of the witnesses was not available due to the death of the reporter and the inability of any one to transcribe the reporter's notes. This absence of a complete record would in itself be sufficient to justify this court in dismissing the appeal. (*Powell* v. *Powell,* 40 Haw. 625, and Hawaiian cases cited therein.)

The evidence of Jose's intent regarding the disposition of his property was practically the same as has been outlined by this court in reviewing the former trial.

Further, the respondent Antone had for years handled all of Jose Teixeira's business affairs and had secured from Jose a power of attorney under date of March 29, 1932.

Antone's intent to defraud Jose and Antone's brothers and sister can be inferred from his clearly proved fraudulent representations in connection with procuring the execution of the deed from his brothers and sister and particularly from the wives of his brothers. It clearly appears from all the evidence, except that of Antone himself, that Jose was an affectionate father to all of his children and would scarcely stoop to trickery in procuring the deed from his children. There was no evidence showing any change in Jose's affection and concern for all of his children; there was no evidence that Antone did any more for his father than Paul and his other children. It appears without question that Jose for years before his death constantly referred to Antone as his trustee (or "tutor," a Portuguese word somewhat equivalent to trustee or guardian) and declared Antone was to divide Jose's property among the children after his, Jose's, death. That

Jose was clearly susceptible to the influence of Antone was proved beyond any doubt.

Practically all the elements tending to prove fraud and undue influence are present in this case. The grantor was old and weak in mind and body. This weakness does not require that the grantor be non compos mentis or that " 'the deceased was at the time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed. It is sufficient to show that, from her sickness and infirmities, she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration for the conveyance.' " (*Sumner* v. *Jones,* 22 Haw. 23, 25, quoting from *Allore* v. *Jewell,* 94 U. S. 506.)

The advanced age of the grantor is frequently held to be a material circumstance in determining whether or not undue influence had been exercised upon the transferor of the property. (*Sumner* v. *Jones, supra; Meheula* v. *Hausten,* 29 Haw. 304; *Furtado* v. *Rezents,* 33 Haw. 569; *Allore* v. *Jewell, supra.*)

Jose was at the time of the execution of the deed seventy-eight years old and was so sick and infirm that he died within less than two years thereafter.

The fact that a confidential or fiduciary relationship existed between the grantor and the grantee has been held to require very close scrutiny by the courts and also to justify, along with other circumstances such as inadequacy of consideration, etc., a finding of fraud or undue influence, and the authorities hold there is a presumption of fraud where such facts exist. (*Teixeira et al.* v. *Teixeira,* 37 Haw. 64, 72, 73; *Furtado* v. *Rezents,* 33 Haw. 569; *Christley* v. *Magoon,* 13 Haw. 402; *de Souza* v. *Soares,* 21 Haw. 330.)

In *Keanu* v. *Kamanoulu,* 20 Haw. 96, 100, the court's remark is very appropriate to the question now involved. The court said: "The record before us shows that the

relationship between the plaintiffs and the defendant was confidential in fact as well as in law, and that both actual and constructive fraud has been committed in this case." In that case the deed was from the aged parents (sixty-three and seventy-three years of age, respectively) to their child (forty years of age) who understood and spoke English, as her parents did not, and who had had much business experience, as her parents had not. (See also *Pontes, Gdn. T. Cruz* v. *Pontes et als.,* 40 Haw. 620.)

Where dealings are between those who stand in a confidential relationship as principal and agent, etc., the presumption of undue influence arises from the existence of fiduciary or confidential relationship. (See Bigelow, *Fraud,* vol. 1, p. 261.)

The burden of proof where there is a transaction between those standing in a fiduciary relationship is upon the person who held the position of superiority and influence by virtue of the relationship. (12 C. J. S., § 69-b-2, p. 1056.)

"While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption." (3 Pomeroy, Eq. Jur., § 956, p. 790 [5th ed., Symons, 1941].)

" 'Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing

himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no such confidential relation had existed.'* " (3 Pomeroy, Eq. Jur., § 956, p. 792 [5th ed., Symons, 1941].)

"The relation and the duties involved in it [the confidential relation] need not be legal; it may be moral, social, domestic, or merely personal." (3 Pomeroy, Eq. Jur., § 956a, p. 794 [5th ed., Symons, 1941].)

Other elements bearing on the question of undue influence are lack of independent advice by the grantor, the grantee's procuring the drafting of a deed, the grantor's inability to read English, the lack of consideration, and the secret conferences by the grantee with the grantor. These all justify the finding of undue influence by the court below. In fact, any other finding would be against the overwhelming weight of the evidence.

The trial judge in his decision found that "When that 18-foot strip was transferred, the Court finds that the children transferred their interest upon the understanding and belief that when they transferred the 18 feet that they were going to get back not 18 feet eventually but an interest in all of Jose's land, and it is by virtue of the statements made to the children at that time, especially one of the women, who voiced some objection to the transfer * * *."

The court further found "that Jose at the time he made that conveyance to Antone, that it was done with the expectation that Antone would make proper and equitable distribution of it in accordance with the old man's wishes that the property should be divided among all the children, and in view of the confidence and position which Antone occupied for many years, that reliance upon [of] Jose was justified."

The court based its decision on "undue influence, which

admittedly Antone had, and admittedly Antone was able to freely sway the old man Jose's mind." The court further stated that "when that property was transferred to Antone by Jose that [the agreement was] Antone was to continue to act in the same capacity he had been acting for Jose, as a fiduciary, as a trustee * * *."

The court below, although it held that the property was transferred to Antone to hold in trust and divide among his brothers and sister, is we believe charitable in saying that it believed Antone originally intended to carry out the terms of the trust but changed his intent subsequent to Jose's death. The evidence would indicate not only that Jose was led to believe Antone would divide among his brothers and sister, but the misrepresentations regarding the deed from the children to their father and the secrecy surrounding the securing of the deed from Jose to Antone, with much other evidence, would indicate that Antone never had any intention to carry out Jose's wishes but intended the fraud from the inception. However, the result is the same so far as the present obligations of Antone and the rights of petitioners are concerned.

Decision and decree of trial judge sustained.

*J. V. Esposito* (*Esposito & Esposito* with him on the briefs) for respondents-appellants.

*C. N. Tavares* (also on the brief) for petitioners—appellees.