630 P.2d 1077 (1981)
Richard E. WELTON, Plaintiff-Appellant,
v.
Florence GALLAGHER, Defendant-Appellee.
No. 7100.
Intermediate Court of Appeals of Hawaii.
June 24, 1981.
Certiorari Granted July 16, 1981.
As Amended July 28, 1981.
*1080 Jack C. Morse, Honolulu, for plaintiff-appellant.
Gene Bridges, Honolulu, for defendant-appellee.
Before HAYASHI, C.J., and PADGETT and BURNS, JJ.
BURNS, Judge.
This is an appeal by Plaintiff-Appellant Welton from the judgment of the court below in favor of Defendant-Appellee Gallagher after a jury-waived trial.
Mr. Welton argues that the court erred in finding that he had made a valid inter vivos gift of bearer bonds worth $20,000 to Mrs. Gallagher. He contends that either no gift was made or, in the alternative, that the gift was causa mortis and had been revoked, and urges upon us the following propositions:
1. That the evidence presented by Mrs. Gallagher did not meet the "clear and convincing" standard of proof;
2. That Mr. Welton was incompetent to form the requisite donative intent because of any or all of the following: drunkenness, depression, or undue influence exerted by Mrs. Gallagher;
3. That Mr. Welton had not actually delivered the bonds nor had Mrs. Gallagher accepted them; and that regardless of his competency, Mr. Welton did not have any donative intent;
4. That if, in fact, a gift was made, it was motivated by Mr. Welton's fear of imminent death and was therefore a revocable gift causa mortis; and,
5. That the trial court erred in its refusal to hear evidence of Mr. Welton's reputation for truth and veracity.
We are unable to agree with any of these contentions and, accordingly, affirm the judgment below.
Mr. Welton, a businessman in his late sixties, and Mrs. Gallagher, a widow in her forties, met in October 1973. Shortly thereafter, Mr. Welton underwent several operations for cancer. When he was released from the hospital in late 1973 or early 1974, Mrs. Gallagher devoted much time and attention to his needs. Mr. Welton was very appreciative and their friendship prospered.
In January 1975, Mr. Welton's corporation purchased an ice cream business, which he and Mrs. Gallagher operated until it was sold in July of that year. During this period, they shared a house in Wahiawa.
After the sale, Mr. Welton and Mrs. Gallagher moved to her residence on Bernice Street, where Mr. Welton remained  except during periods of disagreement when he moved out temporarily  until late 1975. Mr. Welton spent a good deal of money on repairs and improvements to the Bernice Street property. In addition, he had earlier paid off some $8,000 of Mrs. Gallagher's debts.
During this last half of 1975, Mr. Welton and Mrs. Gallagher intermittently discussed other types of businesses they could become involved in together; however, nothing concrete developed.
In November 1975, Mr. Welton moved out of the Bernice Street house. In January 1976, he began living with Mrs. Gallagher's calabash niece, Sandra Kwock, a woman in her twenties. Mr. Welton and Ms. Kwock entered into an agreement whereby Ms. Kwock would take care of Mr. Welton for the rest of his life and Mr. Welton would give Ms. Kwock $25,000 in bearer bonds for her financial security and, possibly, toward the purchase of a condominium.
In February or March of 1976, Ms. Kwock left town with these bonds and has not since been located.
Mr. Welton, in his distress, turned to Mrs. Gallagher for comfort. Although she had been deeply hurt by the affair, she consoled Mr. Welton and invited him to return to the Bernice Street residence. Mr. Welton moved back in and the parties resumed their previous relationship.
In April 1976, Mr. Welton presented Mrs. Gallagher with $20,000 in bearer bonds and *1081 told her to place them in her safe deposit box. Mr. Welton testified that he did this for the dual purpose of preserving capital to start a theoretical new business venture and for Mrs. Gallagher's financial security in case of his death. Mrs. Gallagher testified that the bonds were given as a gift: Mr. Welton had told her that because she was so much more deserving of his generosity than Ms. Kwock, he wanted her to have bonds as well.
In October or November 1976, Mr. Welton and Mrs. Gallagher ended their relationship and Mr. Welton moved out of the Bernice Street house permanently. When he subsequently demanded that Mrs. Gallagher return the bonds and she refused, he commenced this action.
A "gift" is generally defined as a voluntary transfer of property by one person to another without any consideration or compensation therefor. City of Bellevue v. State, 92 Wash.2d 717, 600 P.2d 1268 (1979). Because of the obvious potential for abuse inherent in such a transaction, courts have generally placed the burden of establishing the gift on the donee, Siko v. Sequirant, 51 Haw. 118, 452 P.2d 447 (1969), even when the issue of gift is first raised by a defendant in his answer, Detra v. Bartoletti, 150 Mont. 210, 433 P.2d 485 (1967).
There is some question as to the extent of this burden  whether it be a preponderance of the evidence, as is customary in civil cases, or the higher standard of clear and convincing evidence. The general rule is that in order to sustain a gift, the evidence must be clear and convincing. 38 Am.Jur.2d Gifts § 103 (1968). However, Professor Corbin elaborates on and refines this rule by stating that the evidence must be clear and convincing if the trial in which the proof is offered is held after the donor's death. 4 Corbin on Contracts 654-55 (1951). The higher standard is then required because of the greater possibility of fraud or pretension. In Hawaii, the question of burden of proof, whether the donor be living or dead, has not been decided.[1] Nor need the question today be decided, for in its findings of fact, the trial court stated:
28. The testimony of Defendant was clear and convincing in showing that at the times Plaintiff delivered the bonds to Defendant, he did not place any conditions on her use of the bonds and he intended to make an outright gift of them. [Emphasis added.]
Clear and convincing evidence has been defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford, 161 Ohio St. 469, 477, 120 N.E.2d 118, 123 (1954).
Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 211 S.E.2d 88, 92 (1975). See also Jolley v. Jolley, 46 Ohio Misc. 40, 347 N.E.2d 557 (1975); Hobson v. Eaton, 399 F.2d 781 (C.A. 6th 1968).
To ascertain whether the appellee's evidence fails to produce in the mind of a reasonable person a firm belief as to the facts sought to be established, we must pursue the further questions raised by this appeal.
Mr. Welton raises as a preliminary issue several questions regarding his competency as a donor. First, he avers that no gift may be found because he was the victim of Mrs. Gallagher's undue influence. He draws our attention to the case of Teixeira v. Teixeira, 40 Haw. 631 (1955), wherein our supreme court held:

*1082 The fact that a confidential or fiduciary relationship existed between the grantor and the grantee has been held to require very close scrutiny by the courts and also to justify, along with other circumstances such as inadequacy of consideration, etc., a finding of fraud or undue influence, and the authorities hold there is a presumption of fraud where such facts exist.
40 Haw. at 636.
We find no evidence whatsoever of undue influence in this case. First, the burden of proving that a donor was dominated by the donee, or that a confidential or fiduciary relationship existed between them, rests on the one attacking the gift. Amado v. Aquirre, 63 Ariz. 213, 161 P.2d 117, 160 A.L.R. 1126 (1945). Basically a "fiduciary relationship implies a condition of superiority held by one of the parties over the other." Teixeira, supra, at 637. For example, the donor in Teixeira was found by the court to be "clearly susceptible to the influence of" the donee. Id. at 635.
In the instant case, Mr. Welton has not adduced sufficient evidence to show that at the time of the gift, his relationship with Mrs. Gallagher was a fiduciary one or that he was an inferior, susceptible party.
However, even assuming arguendo a fiduciary relationship, the donee is merely required to come forward with evidence contrary to the presumption of undue influence. Where such evidence rebutting the presumption is introduced, the presumption disappears. Columbia Savings and Loan Ass'n v. Carpenter, 33 Colo. App. 360, 521 P.2d 1299 (1974). In our opinion, ample credible evidence rebutting the presumption of undue influence was introduced in the instant case: Mr. Welton appears to have maintained the upperhand in all aspects of the relationship. On the business level, he controlled the parties' financial dealings; on the emotional level, he came and went as he chose, even taking time off for an alliance with Mrs. Gallagher's niece.
Next, Mr. Welton alleges that no gift was possible because he was unable to form the requisite donative intent by reason of his chronic depression and drunkenness. The burden of proof with regard to competency to make a gift rests upon the donor. This is because there is a presumption of competency; therefore, the burden of proving incompetency must be on the one who asserts it. Sims v. George, 24 Utah 2d 102, 466 P.2d 831 (1970). In fact, where a gift is properly pleaded in defense to an action, the donor's mental capacity will not be an issue at all unless it is affirmatively set up in the reply. Holland v. Pearson, 271 Ky. 115, 111 S.W.2d 581 (1937); 38 C.J.S. Gifts § 64 (1943). In the instant case, the issue of Mr. Welton's competency is raised for the first time on this appeal; it is contrary to the position he took below. Therefore, we decline to entertain the question. Miller v. Leadership Hsg. Sys., 57 Haw. 321, 555 P.2d 864 (1976).
Mr. Welton next asserts that even apart from these preliminary matters, Mrs. Gallagher has failed to prove the elements of gift. For a transaction to amount to a gift, it must appear that there was a sufficient delivery of the property, an acceptance of the property, and an intention to make a gift. Estate of Lalakea, 26 Haw. 243 (1922).
Delivery is not a complex matter. As the Hawaii Supreme Court stated in Siko v. Sequirant, 51 Haw. 118, 452 P.2d 447-448 (1969): "[A] donor must divest himself of control of the gift for delivery to be complete. Brown v. Bishop & Co., 5 Haw. 54 (1883)." In other words, the donor must do acts sufficient to strip himself of dominion and control over the property. 4 Corbin on Contracts 650 (1951). Here, Mr. Welton gave Mrs. Gallagher bearer bonds, bonds which by definition are redeemable by whosoever holds them. She testified that he told her he was giving her the bonds with no strings attached and that she should place the bonds in her own safe deposit box, a box to which he had no rights of entry. Clearly he ceased to have any control over the bonds and can be deemed therefore to have delivered them to Mrs. Gallagher.
*1083 The matter of acceptance is likewise fairly straightforward. The exercise by the donee of dominion over the subject of the gift or an assertion of a right thereto is generally held to be evidence of acceptance; and where the gift is beneficial to the donee and imposes no burdens upon her, acceptance is presumed. 38 Am.Jur.2d Gifts § 34 (1968). Here, Mrs. Gallagher exercised dominion over the bonds by placing them in her safe deposit box. She has always maintained they belong to her; certainly they benefit and do not burden her. Therefore, acceptance is presumed.
The final element necessary for a finding of a valid gift is donative intent.
The most difficult element to establish a completed gift is the donative intent of the donor. Whether such an intent exists is addressed to the perception of the trial court. [Citation omitted.] The existence or absence of intent to make a gift is an evidentiary issue to be resolved by the finder of fact. His resolution of that issue will not be overturned on appeal if his finding is supported by substantial evidence.
Buckerfield's Ltd. v. B.C. Goose & Duck Farm, Ltd., 9 Wash. App. 220, 511 P.2d 1360, 1363 (1973). See also Estate of Ramsey v. State Dept. of Rev., 42 Colo. App. 163, 591 P.2d 591 (1979).
In the instant case, we hold that the trial court did base its finding of donative intent on substantial evidence: Mr. Welton was very fond of Mrs. Gallagher; he had made substantial gifts to her in the past. He was particularly grateful to her for taking him back after his misadventure with Sandra Kwock. He was an experienced businessman and was fully aware of the consequences of relinquishing all control over bearer bonds. He did not demand that the bonds be placed in a joint account or depository; he did not convey any written instructions or reservation of authority when he gave the bonds to Mrs. Gallagher.
Because all the elements of a valid gift are present, we hold that there was no error in the finding of the lower court that such a gift was made.
Mr. Welton's alternative theory on this appeal is that even though a valid gift was made, it was a gift causa mortis and, therefore, revocable. The elements of a gift causa mortis are these:
(1) [T]he gift must be made in view of approaching death from some existing sickness or peril; (2) The donor must die from such sickness or peril without having revoked the gift; (3) There must be a delivery... of the subject of the gift to the donee ..., subject, however, to revocation in the event of recovery from the pending sickness. [T]he vital, although not the only difference between a gift causa mortis and one inter vivos is that the former may be revoked by the donor if he survive the pending sickness or peril, and does not pass an irrevocable title until the death of the donor, while a gift inter vivos is irrevocable and vests an immediate title.
In Re McDonald's Estate, 60 Wash.2d 452, 374 P.2d 365, 366 (1962). See also Estate of Palau, 42 Haw. 144 (1957).
In this case, although Mr. Welton had undergone cancer surgery in 1973, there is no indication in the testimony that in April of 1976 he felt himself to be in immediate peril. Indeed his own statements regarding starting a new business and his active social life strongly indicate that he was not preeminently occupied in contemplating the transience of life and the prospect of his own imminent departure therefrom. There is no error in the trial court's finding that the gift was inter vivos.
Finally, Mr. Welton contends the court erred in refusing to hear evidence of his reputation for truth and veracity. The rule in Hawaii is that evidence is not admissible to prove that the reputation of a witness for truth and veracity is good where there has been no attempt to impeach him by showing that his reputation for truth *1084 and veracity is bad. Brown v. Walker, 24 Haw. 285, 291-92 (1918).[2]
Mr. Welton attempted to introduce reputation evidence before his reputation had been attacked, before, in fact, the defense had called any witnesses at all. The court rightly rejected this testimony.
Based on the above, we find the trial court's findings and conclusions are based on clear and convincing evidence and are such as would produce in the trier of facts a firm conviction as to the allegations sought to be established; and, therefore, its judgment is affirmed.
NOTES
[1] Except in cases of close kinship, where the burden is reversed. In Ables v. Ables, 39 Haw. 598 (1952), the Hawaii Supreme Court held that where the parties are in close kinship with each other such as husband and wife or parent and child, and property is transferred without consideration from one party to the other, there will be a presumption that the transferror intended a gift; no trust for him will result. A trust can be established only by "clear and convincing proof of a conclusive nature." 39 Haw. at 600.
[2] 608. Evidence of character and conduct of witness. (a) opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
(1) The evidence may refer only to character for truthfulness or untruthfulness, and
(2) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
Rule 608, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes, effective January 1, 1981.