EDMUND AND EDWIN HART *vs.* HIEL KAPU *et al.*

APPEAL FROM DECISION OF AUSTIN, J.

JULY TERM, 1884.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

In an action against a trustee for an accounting, on appeal by both parties from the decision of the lower Court, the Court affirms the judgment below.

A trustee should keep accurate books of account; if not, every intendment of fact will be made against him.

Trustees should be allowed reasonable compensation for their time and trouble.

### OPINION OF THE FULL COURT, BY JUDD, C. J.

THE judgment below was appealed from by both plaintiffs and respondents, but upon due consideration of the arguments of counsel and an examination of the evidence recorded, we have come to the conclusion that the judgment of the Court below should be affirmed.

*W. A. Kinney*, for plaintiffs.

*F. M. Hatch*, for defendants.

Honolulu, September 15, 1884.

### DECISION OF AUSTIN, J., APPEALED FROM.

THIS is an action in equity for an accounting by defendants, as representatives of Kaluapihaole, deceased, for a balance of the rents and profits of the fish pond of Kupeke, in Molokai, and other property which the bill alleges deceased had in charge, as plaintiffs' trustee, for three years or more from and after August, 1878. The bill avers fraud and failure properly to account.

The answer denies fraud and trust, and alleges accounting in full to Meanui, the mother of plaintiffs. Kaluapihaole and Meanui, who best knew the facts in the case, are dead.

The evidence on both sides is indefinite and unsatisfactory. No books or memoranda of accounts are presented by either party. The answer of the administrator alleges that a book of accounts of the receipts and expenses of the fish pond were kept by Kaluapihaole, but that after his decease it was stolen from his house.

The proofs show that Henry Hart, the father of the plaintiffs by Meanui, who were his illegitimate children, had a lease of the fish pond of Kupeke and appurtenances for ten years, expiring October 2, 1881. That on January 27, 1873, he granted it and other property to Auwaelua and his successors, in trust for the use of Meanui and the plaintiffs.

Auwaelua died about June, 1878, and the proofs show, as I think, that Kaluapihaole, deceased, took charge of the fish pond and some other property about October 2, 1881. All of his dealings about the pond were with Meanui; she was living in Hono-

lulu, and the plaintiffs lived with her. Two or three letters, pur-
porting to be from Kaluapihaole to Meanui, are produced. They
bear, I think, internal evidence of genuineness.

A paper dated December, 1878, running to Kaluapihaole, where-
by he was stated to be trustee for the plaintiffs, was put in evi-
dence. It was delivered to Meanui at Honolulu, and she at about
its date went to Molokai with it. There is no proof that it was
delivered to Kaluapihaole. But from expressions in his letters
and from the acts of parties, and all the evidence in the case, I
think there is enough to show that Kaluapihaole should account
as a trustee to the plaintiff in this case, and I shall so find. See
Perry on Trusts, Sec. 245. I shall also find from all the proofs
that payments were properly made to Meanui. She was the moth-
er of the plaintiffs, and they were living with her at Honolulu.
Kaluapihaole was at Molokai. Expenditures for them would
properly be made by her as their natural guardian. The proofs of
her bad habits were not enough to stamp the payments as made
in bad faith.

As to the proceeds of the use of the fish pond, we have no book
of account to guide us, and must resort to general evidence by
those acquainted with it. It is referred to as one of the best
ponds on the Islands. Many witnesses were sworn, and from
their testimony the proceeds can only very indefinitely be deter-
mined. I shall not rehearse the proofs. The plaintiffs claim that
the sales from the pond were almost weekly during the whole
time and amounted to about $50 a week. I think the proof does
not sustain this. Some of the witnesses say that probably fish
were sold from the pond once a week about half the time. I think
this approximates the truth. The proof shows that Kaluapihaole
had other ponds and got fish from other sources, which he sold.
The proof also shows that after he got Kupeke he invested about
$2,000. For each time, from the proofs, I think the receipts above
expenses, aside from the value of Kaluapihaole's services, were on
an average about $40 a week. The whole time was three years.
One-half of the time was one and a half years, or seventy-eight
weeks. This makes the gross receipts $3,120. For this sum the
defendant Kapu, as administrator, must account.

Out of this must come first the payments. Of payments and of

the expenses the trustee should keep accurate books of account. If not, every intendment of fact will be made against him.

See Perry on Trusts, Sec. 911.

The defendants say that books of account were kept by Kaluapihaole, but they were stolen after his death. This explanation is not very satisfactory. The defendant Kapu says he was at the house of deceased a week and a half after his death and found no papers nor letters nor account-book. It is strange what became of them all. Several witnesses were sworn as to many payments to Meanui, but not a receipt or a scrap of paper showing the amount of any payment is presented. This is remarkable. The amount of many payments are not remembered by the witnesses. This uncertainty, I think, must be taken in a measure against the defendants.

Nakumu swears that he paid Meanui not more than $1,000 nor less than $300. He produces no receipt or memorandum. I shall call this payment $500. Including with this sum actual amounts proved, I make $1,034 of payments. Many other payments are sworn to, but the witnesses do not know the amounts.

Kaluapihaole acknowledges in his letter of December, 1879, that he had from Meanui a loan of $400, which he claims to have returned in full, including $100 then enclosed. Most of the payments shown were after this time, some sent before may have been upon it.

For all of the payments unknown in amount it will be fair to allow $200.

This makes, to be allowed as payments, $1,234. The defendants must be allowed the rent, $400. Repairs of fish pond, $100.

The trustee must also be allowed a reasonable price for his services. He was placed in possession as manager of an estate. As such he should be allowed all proper expenses to keep up the estate, and his personal work was constantly required. The better rule now is that trustees should be allowed reasonable compensation for their time and trouble.

See Perry on Trusts, Sections 913 and 917.

The proof showed that Kaluapihaole occupied the dwelling-house and grounds at Kupeke fish pond. He had also other fish ponds which he worked in whole or in part.

There was proof that half the net proceeds would be proper pay to an agent running a pond, but I think that would be too much to the trustee here. He had, however, important and constant duties to attend to, and I shall allow him $5 a week for the whole time he was in charge, or $780.

The estate of Kaluapihaole is chargeable with $3,120, and is to be allowed for expenses, payments and his services $2,514, which leaves a balance due plaintiffs of $606, for which sum, with interest from January 1, 1882, the plaintiffs may have a decree with costs.