IN THE MATTER OF THE ESTATE OF
JOHN K. PALAU, DECEASED.

No. 3034.

ARGUED NOVEMBER 15, 1955.     DECIDED OCTOBER 14, 1957.

TOWSE, C. J., STAINBACK AND RICE, JJ.
(Towse succeeded by Rice as C. J. at time of opinion.)

*Per Curiam.* This case was argued and submitted to the full court. The term of one of the justices, in the interim, having expired and he having left the bench, it was stipulated by all parties that the case be decided and opinion rendered by the two remaining justices.

This is an appeal from the final decree entered March 30, 1955, by the Honorable Albert M. Felix, acting as judge of the circuit court, second circuit, Territory of Hawaii, presiding at Chambers, in probate, in the matter of the estate of John K. Palau, deceased (probate number 2902).

John Palau, a widower, died intestate in September, 1935. He left surviving him as his next of kin and heirs at law seven children, William L., the appellee herein, adult, Robert K., adult, Gladys Kealoha, adult, May L. (now Mrs. Weisbarth), age 17, Beatrice (now Mrs. Morris), age 15, Thelma, age 10, and Emma (now Mrs. Hashimoto), age 9. The daughters are appellants herein and all are now adults.

William Palau was appointed administrator of his father's estate in November of 1935. Robert was appointed guardian of the property of his four minor sisters in January, 1936.

Upon William's petition in December, 1935, the court granted a family allowance of $45 monthly for the four

daughters then being minors. No part of this was ever paid.

At the time of his death, John Palau was an independent pineapple planter on a Hawaiian Homes leasehold at Hoolehua, Molokai. He also owned two unimproved residential lots at Kalama, Oahu. The leasehold with his growing crops and farming equipment was subject to a first lien in favor of the Hawaiian Homes Commission for advances amounting to $2,270. The Kalama lots were subject to a purchase-money mortgage, of $4,000 according to the appellants and of $4,050.50 according to the appellee. Property taxes of $625 were delinquent on the Kalama lots, which at that time were worth at least $750. Decedent left other debts amounting to $718.83.

There was life insurance of $2,000 payable to the estate of the decedent and miscellaneous assets of $200.

Immediately prior to his death, the decedent had $900 in currency belonging to him, which he had kept in an envelope in the lining of his coat and which appellants alleged to have been there at the time of his death and so to have become a part of his estate, but which Gladys Kealoha testified that on his deathbed her father gave to her and she gave to her aunt for safekeeping.

The parties agree that the estate was insolvent at its inception.

Despite a statutory provision requiring an accounting and letters from the clerk of the court, respectively dated June 6, 1938, and August 9, 1947, calling upon the administrator to make an accounting, the administrator made no accounting whatsoever to the court between the date of his appointment and February, 1952, when the appellants herein filed a motion to compel an accounting and pursuant thereto a minute order of the probate judge, presiding in the second circuit, directed the administrator, William L. Palau, to file his accounts.

When, in 1952, responsive to the express order of the court, the administrator, appellee herein, filed an account, it was referred to a master, who conducted his own independent audit and investigation and subsequently filed his report on the facts and made certain recommendations, which appear in the probate record.

The brother Robert approved the account, but the sisters (daughters of the decedent), appellants herein, objected to the administrator's account and a hearing was had on the issues raised by their objections.

It appears from the record that from the inception until the close of the administration, that is to say, on the appointing of the administrator in November of 1935, to and including his accounting in 1952 and the subsequent hearing thereon, the administrator had available to him the services and advice of counsel, Hiram L. Fong, Esq., being his attorney of record with respect to the administration of the estate and matters incidental thereto or connected therewith.

It further appears from the record that upon his appointment as administrator, the said William L. Palau, in his administrative capacity and without obtaining authorization from the court or from the heirs of the decedent other than himself, took up and carried forward his father's farm operations from about the date of the latter's death in 1935 and continued such operations to the latter part of 1937. In doing so he bought fertilizers and supplies, paid for hauling, engaged labor and rented equipment. He collected such sums as could be had for sales of the products of the farm. During the period in which he actively operated the farm he incurred a net loss of $689.70, having paid himself cash amounting to $827.25. In 1937 he abandoned the homestead and took up his residence in Honolulu. The homestead lay idle between 1937 and 1944, when the said administrator, William L. Palau,

entered into a crop-planting contract under which he thereafter received $7,300.

In June 1936, the Kalama lots were sold at a tax sale, subject to the owner's one-year equity of redemption. Attorney Fong, acting for the estate of John Palau, deceased, procured a release of the $4,000 mortgage for $50. The attorney then exercised the estate's right of redemption by paying the purchaser $719.65. The money paid for the release and redemption was advanced by attorney Fong personally and full interest thereon was charged by him until the date of repayment 14 years later. The date of the loan appears to have been between May 4 and 10, 1937.

On April 22, 1937, after the above mentioned release had been obtained, the other heirs joined in a conveyance to William Palau and his heirs and assigns of "all their right, title, and interest in and to the estate of John K. Palau, deceased," including their rights to the homestead. The consideration recited was one dollar and the assumption by the grantee of the obligation due the Hawaiian Homes Commission, "approximately $1,900." Robert signed in his capacity as guardian of his infant sisters, who also signed. The court authority for the sale was obtained from Judge F. M. Brooks, of the circuit court, first circuit, Territory of Hawaii. However, appellants say such authority was obtained after the sale had taken place and was of no effect. The court below ordered the Kalama land restored to its status immediately prior to the deed of April 22, 1937, by his brother and sisters to William Palau, and it is a contention of the appellee through the loan obtained by him from attorney Fong, the procurement by the latter of a release of the $4,000 mortgage for $50 and the exercise of right of redemption by paying the purchaser, at foreclosure, $719.65, the appellants have been greatly benefited, by an increase in the value of the Kalama land from $750 to $21,500.

In 1946, the administration still being open, the administrator sold a quantity of mulch paper belonging to the estate for $112.50. There is no trace of this receipt in the schedules attached to his account.

The court below made certain surcharges which will not be disturbed.

It further found that the actions of the administrator in relation to the administration of the Kalama property and the Hawaiian Homes leasehold were highly irregular and dilatory but due to the inflation of the land values and the passage of time in relation to the Kalama property and the eventual leasing for pineapple cultivation of the lands in the case of the homestead, the delay inured to the benefit of the estate; therefore, it allowed as a proper charge the amounts paid to the Hawaiian Homes Commission in August 1951 "even though the delay in payment incurred additional expenses to the estate."

It found the repayment of the Hiram Fong loan was proper though "the Administrator should be surcharged for his negligence in permitting debts represented by the loans of Hiram L. Fong * * * to increase from 1946 to September 11, 1951 until paid" although there was money in the hands of the administrator, and that therefore the administrator should be "surcharged to the extent of one-half of the interest" on such loan during said dates.

The same negligence operated in the case of the amount due the Hawaiian Homes Commission and, therefore, the same ruling should be made, that is, the administrator should be surcharged one-half the interest payments so made to the Hawaiian Homes Commission.

Regarding the $900 given *mortis causa*, the court was correct in holding that the heirs had no claim thereto although a gift *mortis causa* is subject to the claim of creditors of the donor's estate if his assets are insufficient, just as a legacy is subject to abatement if the assets are insuf-

ficient to pay the creditors.

"Property given *mortis causa* is as fully subject to the claims of creditors of the donor's estate if his assets are insufficient, as a legacy is to abatement * * *. (Citing cases.)" (32 Col. L. Rev. 702 [1932].)

"* * * nor is the gift avoided by the insolvency of the donor's estate further than may be necessary for the payment of debts." (1 Woerner, *American Law of Administration,* 3d ed., p. 179 [1923].)

"The donee of a gift causa mortis does not depend upon the will of the administrator for his title. His title vests before the death of his donor, subject to revocation by the donor during his lifetime, or by his recovery from the disease from which he apprehended death when he made the gift. The subject of the gift does not become a part of the assets of the estate, for the reason that it did not belong to the donor at the time of his death. But, upon the principle that one must be just before he is generous, the administrator may pursue the thing so given in the hands of the donee, whenever he can establish the fact that it is needed to pay debts of the donor, by reason of the insufficiency of assets for that purpose." (*Seybold* v. *Grand Forks Nat. Bank,* 67 N. W. 682, 684.)

In the present case the court found the estate was insolvent so the administrator would be justified in pursuing the gift *mortis causa* to the extent that it might be necessary to pay the debts of the estate.

No books of account were kept by the administrator. A few vouchers were submitted with his account, but these do not indicate what payment was made. No journal of transactions was kept and check stubs have been chiefly relied upon to support disbursements made. Such laxity in keeping accounts is inexcusable and every presumption must be resolved against the administrator. If accurate books of account are not kept by a trustee or administrator,

"every intendment of fact will be made against him." (*Hart* v. *Kapu,* 5 Haw. 196.)

The administrator having taken possession of the money representing the so-called gift *mortis causa* cannot now be heard to say that he should not account for the same, he should show either that this money has been used to pay creditors' claims or returned to the donee.

The administrator, therefore, should be surcharged in the amount of $700 for which he has not accounted; also, the amount of $112.50 representing the value of the mulch paper belonging to the estate sold by him.

To recapitulate, the surcharges fixed by the court below will not be disturbed; in addition thereto, the administrator should be surcharged the items above discussed, that is, $112.50 received from the sale of mulch paper, $700 taken from the donee of the $900 gift *mortis causa,* one-half the interest paid to the Hawaiian Homes Commission, and the full amount of the master's fee necessitated by the undue delay in the hearing on the accounts.

Remanded to the judge presiding at chambers in probate for compliance with this opinion.

*Charles M. Hite* (also on the briefs) for appellants.

*Herbert Y. C. Choy* (*Fong, Miho, Choy & Chuck* on the brief) for appellee.